USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

                        Plaintiff,

-against-

HUDSON EXCESS INSURANCE COMPANY,

                        Defendant.

1:21-cv-6671 (MKV)

**OPINION AND ORDER
GRANTING MOTION
FOR PARTIAL
SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

    Kyle Keys was injured on a job site when he fell into an uncovered trench while walking backwards. He filed a personal injury lawsuit in New York state court (the "underlying lawsuit"), naming as defendants the contractor for the job and the City of New York. The subcontractor who employed Keys was not named as a defendant. However, the contractor and the City of New York brought third-party claims against the subcontractor for contribution and indemnification.

    The question in this case is which of two insurers bears responsibility for defending the project contractor and the City in the underlying lawsuit: the plaintiff in this case that insured the contractor, or the defendant that insured the subcontractor. The plaintiff now moves for partial summary judgment, asking the Court to declare that the defendant owes a duty to defend, that the defendant's policy provides primary coverage, and that the plaintiff's coverage is excess to that of the defendant. The plaintiff also seeks an award for all sums it has thus far paid in defending the underlying lawsuit. For the reasons that follow, the motion for partial summary judgment is granted.

1

**FACTUAL BACKGROUND**[1]

I.    THE ACCIDENT

The accident at issue here happened in connection with a plumbing project. Specifically, Richards Plumbing and Heating Co. ("Richards") agreed to provide plumbing services for the New York City Department of Homeless Services ("DHS") and, to that end, received a permit from the City's Department of Buildings to work at 22 East 119th Street in Manhattan (the "project site"). Pl. Facts ¶¶ 9, 10. Richards subsequently entered into a subcontract with RVS Construction Corp. ("RVS"), pursuant to which RVS agreed to work on a sewer line replacement at the project site, and also agreed to procure commercial general liability insurance that would include DHS and Richards as additional insureds. Pl. Facts ¶¶ 11-16.

Kevin Keys worked for RVS at the project site. Pl. Facts ¶ 17. One day he was walking backwards with a wheelbarrow when he fell into an uncovered trench. Pl. Facts ¶ 13. He later testified that digging trenches was a part of his work, that he was working on the main floor of the project site at the direction of RVS at the time of the accident, that the trench he fell into was usually covered by plywood, and that RVS employees were standing near the trench at the time of his fall. Pl. Facts ¶ 22. He further testified that a plumber—who worked for Richards—had removed the plywood from the trench at some point before his accident, Def. Facts ¶¶ 37-38, and that he was not aware of the unprotected trench until it was too late. Pl. Facts ¶ 23.

---

[1] The facts alleged herein are drawn from Plaintiff's Local Rule 56.1 Statement [ECF No. 19] ("Pl. Facts"), the Declaration of Amy C. Gross in support of Plaintiff's motion for partial summary judgment and attached exhibits [ECF No. 20] ("Gross Decl."), the Declaration of Christine Dodge in support of Plaintiff's motion for partial summary judgment and attached exhibits [ECF No. 21] ("Dodge Decl."), Defendant's Counterstatement in response to Plaintiff's Local Rule 56.1 Statement [ECF No. 26] ("Def. Facts"), and the Declaration of Michael F. Panayotou in opposition to Plaintiff's motion for partial summary judgment and attached exhibits [ECF No. 25] ("Panayotou Decl."). Citations to the parties' Rule 56.1 Statements incorporate by reference the documents cited therein, including the respective insurance policies. Unless otherwise noted, where only one party's 56.1 Statement is cited, the other party does not dispute the fact asserted.

## II.     THE UNDERLYING LAWSUIT

Keys brought a personal injury lawsuit in New York state court based on theories of negligence and violations of various statutes and regulations. Pl. Facts ¶¶ 18-19. The named defendants included (among others) Richards and the City of New York (the "City"). Pl. Facts ¶¶ 18-19. Keys alleged that his injuries were due to the "negligence of the defendants and defendant's agents, servants, licenses, contractors, subcontractors, employees and other affiliates," for (among other things) allowing "the trench to exist and remain opened and unprotected," and for "failing to place warnings and/or barricades about this dangerous and hazardous condition." Pl. Facts ¶ 20. While Keys did not name RVS as a defendant,[2] Richards and the City both asserted third-party claims against RVS for (among other things) contribution and indemnification. Pl. Facts ¶ 21.

RVS moved to dismiss the third-party claims brought against it, but the state court denied the motion. Pl. Facts ¶ 26. In so doing, the state court concluded that "in the absence of evidence that anyone other than third party defendant [RVS] was working in the area, plaintiff's testimony raises issues whether third party defendant's negligence caused plaintiff's injury." Pl. Facts ¶ 27. The identified issues included whether RVS "failed to direct, supervise, guide, and assist plaintiff as he pulled the wheelbarrow down the narrow hallway; provide him adequate equipment to perform the task, and keep the trench covered or barricaded." Pl. Facts ¶ 27. Put differently, the sate court could not rule out the possibility that RVS was at fault for the injury.

---

[2] Keys was not able to name RVS as a defendant due to New York's Workers' Compensation law, which prohibits an employee from filing a personal injury lawsuit against his employer. In New York, the only remedy for an employee against his employer for injuries during the course of employment is worker's compensation benefits. *See Weiner v. City of New York*, 19 N.Y.3d 852, 854, 970 N.E.2d 427, 428 (2012).

### III. THE INSURANCE DISPUTE

While the dispute over liability played out, there was a side dispute over which insurance companies had the duty to defend Richards and the City in the underlying lawsuit—the insurer of Richards (the contractor) or the insurer of RVS (the subcontractor). Specifically, Plaintiff Travelers Property Casualty Company of America ("Travelers") insured Richards under a commercial general liability policy. Pl. Facts ¶ 1. Travelers provided a defense for its insured, Richards, and its additional insured, the City, pursuant to this policy, when the underlying lawsuit commenced. Pl. Facts ¶ 34. However, Travelers maintained that the duty to defend was rightfully owed by Hudson Excess Insurance Company ("Hudson"), which provided general liability insurance to RVS. Pl. Facts ¶ 5.

The Hudson policy covers not only RVS, as the named insured, but also additional insureds. The Hudson policy expressly extends coverage to any "organization that [RVS] agree[s] in writing in a contract . . . be added as an additional insured." Pl. Facts ¶ 7. It also includes the City of New York, "with respect to operations performed by you [RVS] or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization." Pl. Facts ¶ 8. Notably, coverage is provided for additional insureds only with respect to bodily injury "caused, in whole or in part, by" the acts or omissions of RVS or those acting on behalf of RVS. Pl. Facts ¶ 7.

Both the Travelers policy and the Hudson policy provide coverage for bodily injury that takes place during the policy period and is caused by an accident. Pl. Facts ¶¶ 2, 9. Under both policies, the insurers have a duty to defend the insured against any suit seeking damages for a covered injury. Gross Decl., Ex. B, Hudson Policy at 11 (pdf pagination); Gross Decl., Ex. A, Travelers Policy at 27. And both policies have "other insurance" clauses, which deal with

4

situations in which multiple policies cover a single loss by specifying when their coverage is "primary" as opposed to "excess."[3]  Pl. Facts ¶¶ 4, 9.

By letter dated March 14, 2018, Travelers, on behalf of Richards, tendered the defense to Hudson.  Pl. Facts ¶ 29.  Hudson denied that tender.  Pl. Facts ¶ 30.  On January 6, 2021, Travelers followed up with Hudson and advised that its tender was on behalf of both Richards and the City.  Pl. Facts ¶ 32.  Hudson again denied the tender and refused to defend the underlying lawsuit.  Pl. Facts ¶ 33.  As a result, Travelers alone has been providing a defense to Richards and the City in the underlying lawsuit and incurring all associated costs, Pl. Facts ¶¶ 34-35, which, according to the Declaration of Christine L. Dodge, amount to $112,690.88.  Dodge Decl. ¶ 4.

## PROCEDURAL HISTORY

Travelers filed this lawsuit [ECF No. 1] ("Compl.") seeking a declaration that (a) Hudson owes the City and Richards both a duty to defend and a duty to indemnify in the underlying lawsuit, and (b) the Hudson policy provides coverage which is primary to the Travelers policy, which provides excess coverage in connection with the underlying lawsuit.  Compl. ¶ 28.  Travelers further seeks an award for all sums it has paid to defend the City and Richards in the underlying lawsuit.  Compl. ¶ 32.

Travelers has now moved for partial summary judgment with respect to the duty to defend.  Specifically, Travelers seeks a judgment that Hudson, and not Travelers, owes a duty to defend Richards and the City and that Hudson must reimburse Travelers for all sums incurred

---

[3] For the reasons discussed below, *see infra* Section II, the precise language contained in these "other insurance" clauses is not necessary to resolve any issues in this case.  As such, the Court does not excerpt the relevant language.

while defending the underlying lawsuit. [ECF Nos. 17, 23]. Hudson opposed the motion [ECF No. 24], and Travelers filed a reply [ECF No. 27].

## LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence," *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006), and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.*

Under New York law,[4] the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (citation omitted). "Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." *Lantheus Med. Imaging, Inc. v. Zurich American Ins. Co.*, 650 F. App'x 70, 71 (2d Cir. 2016) (quoting *In re Estates of Covert*, 97 N.Y.2d 68, 76, 761 N.E.2d 571 (2001)).

## DISCUSSION

Travelers seeks a summary judgment (I) declaring that Hudson owes a duty to defend the underlying action; (II) declaring that Hudson's policy provides primary coverage, and that the Travelers coverage is excess to that of Hudson; and (III) granting Travelers an award for all sums it has paid in defense of the underlying action.

---

[4] The Court applies New York law because the parties' briefing assumes New York law governs. *See Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 70 n.1 (2d Cir. 2017).

**I.     The Duty to Defend**

"An insurer's duty to defend its insured is exceedingly broad." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 15 N.Y.3d 34, 37, 930 N.E.2d 259 (2010) (internal quotation marks omitted).  That obligation is separate from and broader than the duty to indemnify.  *See Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 9, 484 N.E.2d 1040 (1985).  In the seminal case of *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 476 N.E.2d 272 (1984), the New York Court of Appeals held that an insurer has a duty to defend "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Id.* at 310, 476 N.E.2d 272.  The duty also arises "where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'"  *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 690 N.E.2d 866, 868-69 (1997) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 67, 575 N.E.2d 90, 93 (1991)); *see generally* Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 5.02[b] (21st ed. 2022).  "This standard applies equally to additional and named insureds." *Regal Contr.*, 15 N.Y.3d at 37, 930 N.E.2d 259.

The threshold question framed by Travelers' motion is whether Hudson's duty to defend extends to both Richards and the City as additional insureds.

**A. Richards**

Travelers claims that Hudson has a duty to defend Richards and the City in the underlying lawsuit because they are additional insureds under the policy issued to RVS and because the Hudson policy covers additional insureds where a bodily injury is "caused, in whole or in part, by" the acts or omissions of the named insured, RVS.  New York courts have held that such causation language provides coverage for injuries "proximately caused by the named insured," *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 317, 79 N.E.3d 477 (2017),

7

meaning that the named insured "was a 'substantial cause' of the events creating the injury," *Was NJ-2, LLC v. JFB Const. & Dev.*, 111 F. Supp. 3d 434, 457 (S.D.N.Y. 2015) (quoting *Maheshwari v. City of New York*, 2 N.Y.3d 288, 295, 810 N.E.2d 894 (2004)).  Thus, since the motion before the Court involves the duty to defend, the dispositive issue in this case is whether the complaint in the underlying lawsuit, or extrinsic evidence from that suit, establishes the *possibility* that the injury at issue was proximately caused by RVS.

Travelers begins with the underlying complaint.  It argues that the complaint creates the possibility that RVS was a proximate cause of the injury because it states, among other things, that Keys' injury was caused by the "negligence of the defendants and defendant's agents, servants, licenses, contractors, *subcontractors*, employees and other affiliates," for (among other things) allowing "the trench to exist and remain opened and unprotected," and for "failing to place warnings and/or barricades about this dangerous and hazardous condition."  Pl. Facts ¶ 20 (emphasis added).  As a factual matter, RVS was a subcontractor and so fits within the language of the underlying complaint.  As a practical matter, however, Keys did not name RVS as a defendant, and the complaint's passing reference to unnamed "subcontractors" appears in boilerplate language which is intended to cast as wide a net as possible.  Such language, without more, "is simply too vague and conclusory to raise a reasonable possibility of coverage." *Travelers Indem. Co. v. Accredited Sur. & Cas. Co.*, No. 21-cv-3412, 2022 WL 16722107, at *5 (S.D.N.Y. Nov. 4, 2022).

However, the underlying complaints' failure to level allegations against RVS is not dispositive of the duty to defend.  That is because an insurer may have a duty to defend irrespective of what is contained in the complaint if there is extrinsic evidence showing that "the insurer 'ha[d] *actual knowledge* of facts establishing a reasonable possibility of coverage.'"

*Frontier Insulation*, 91 N.Y.S.2d at 175, 690 N.E.2d 866 (quoting *Fitzpatrick*, 78 N.Y.2d at 67, 575 N.E.2d 90) (emphasis added).  Travelers argues that Hudson had such knowledge as a result of the state court's order which concluded that there are factual issues, stemming from Keys' deposition testimony, regarding whether RVS "failed to direct, supervise, guide, and assist plaintiff as he pulled the wheelbarrow down the narrow hallway; provide him adequate equipment to perform the task, and keep the trench covered or barricaded."  Pl. Facts ¶ 27.

In response, Hudson relies on a single argument: given Keys' testimony that an employee of *Richards* removed the plywood from the trench before his fall, it must have been Richards, and not RVS, that proximately caused his injury.  But the fact that Richards may have also proximately caused the injury does not alter the analysis.  It is well settled, after all, that "there may be multiple proximate causes for an injury," *Travelers Indemnity*, No. 21-cv-3412, 2022 WL 16722107, at *6, and that fault by one does not necessarily absolve another of liability.  Here, the Court finds it dispositive that the state court, which is undeniably closer to the underlying lawsuit, considered all the available evidence and nonetheless denied RVS's motion to dismiss the third-party complaint.  Such a ruling establishes that there is at least a *possibility* that RVS proximately caused the injury suffered by Keys, and that, once Travelers re-tendered the defense to Hudson after the state court ruling, Hudson had actual knowledge of this possibility.

Because there is a reasonable possibility that RVS *proximately caused* (even if it was not *the* proximate cause of) Keys' injury, Hudson had a duty to defend the additional insureds in the underlying lawsuit.  See *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65, 575 N.E.2d 90, 91-92 (1991).  Travelers has failed to establish that such a duty existed when it first tendered defense of the underlying lawsuit to Hudson on March 14, 2018, which pre-dates the state court

ruling. *See Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-cv-4845, 1996 WL 389266, at *5 (S.D.N.Y. July 10, 1996) ("[A]n examination of whether an insurer has a duty to defend must focus on the information made available to the insurer and the insurer's actual knowledge at the time a request for a defense was tendered in light of the language of the policy."). But the duty to defend clearly existed at the time of the second tender on January 6, 2021. That duty extends to Richards, who is indisputably an additional insured.

### B. The City of New York

Hudson claims that the City of New York does not qualify as an additional insured under the terms of its policy and that, as a result, the City is entitled to no coverage for the accident. Hudson first argues that the subcontract entered into by Richards and RVS provides only that Richards and the New York City Department of Homeless Services ("DHS") will be named as additional insureds; the subcontract says nothing about the City itself. As a result, Hudson argues that the City does not qualify as an "organization that [RVS] agree[d] in writing in a contract . . . be added as an additional insured." In response, Travelers argues that DHS is an agency of the City and that naming DHS as an additional insured has the same effect as naming the City itself. The Court need not resolve this (seemingly novel) issue, however, as the City clearly qualifies as an additional insured through a different provision of the Hudson policy.

The Hudson policy separately provides that the City of New York will qualify as an additional insured "with respect to operations performed by you [RVS] or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization." Pl. Facts ¶ 8. Hudson contends the plain reading of this endorsement is that additional insureds will be covered only to the extent the operations were performed by RVS *and* RVS received a permit for such operations. Because the work permit was issued to

Richards, and not RVS, Hudson claims that the City does not qualify as an additional insured. However, Hudson's interpretation of the endorsement is strained.

In the endorsement, the prepositional phrase "for which the [the government] has issued a permit" clearly modifies the phrase "operations performed by you [RVS]." Thus, all that matters is whether a permit was issued *for* the operations being performed by RVS. There is no requirement that the permit was issued *to* RVS. Here, Richards was issued a work permit to perform operations on the sewer line at 22 East 119th Street in Manhattan, and it then entered into a subcontract in which RVS agreed to perform certain permitted operations (*i.e.*, sewer line replacement) at that location. Under the circumstances, the Hudson policy potentially provides coverage to the City for the underlying lawsuit and, as a result, Hudson has a duty to defend the City in that action.

## II.     Primary and Excess Coverage

There is no dispute that Travelers too has a duty to defend. Gross Decl., Ex. A, Travelers Policy at 27. But the possibility of dual coverage by both Travelers and Hudson does not mean that both insurers are equally obligated to defend the underlying lawsuit. "Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage . . . is determined by comparison of their respective 'other insurance' clauses . . . ." *Sport Rock Intern., Inc. v. American Cas. Co.*, 65 A.D.3d 12, 18, 878 N.Y.S.2d 339, 344 (1st Dep't 2009); *see also* Ostrager & Newman § 6.03 (21st ed. 2022). These clauses can be used to establish which policy operates to provide primary coverage and which policy's coverage is excess. "The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit." *Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 276 (S.D.N.Y. 2020).

Travelers seeks partial summary judgment declaring that the Hudson policy is primary to any coverage available to Richards and the City under the subject Travelers policy. As discussed above, Hudson disputes that it owes any coverage to Richards or the City as additional insureds. However, Hudson failed to address in its opposition Travelers' argument that the Hudson coverage is primary. As a result, Hudson has conceded the issue through silence. *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 216 n.2 (S.D.N.Y. 2021) ("Plaintiff's briefing fails to respond to Defendants' arguments in favor of the dismissal of his vagueness and money damages claims, and the Court will thus consider those claims conceded."); *In re UBS AG Secs. Litig.*, No. 07-cv-11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address). As such, Travelers is entitled to judgment that Hudson's duty to defend Richards and the City in the underlying lawsuit is primary and attaches before the duty Travelers owes under its policy.

### III.     Reimbursement of Defense Costs

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co.*, 103 A.D.3d 473, 475 (1st Dep't 2013) (internal quotation marks omitted). Here, Hudson had a duty to defend the City and Richards in the underlying lawsuit since Travelers tendered to Hudson on January 6, 2021. To date, Hudson has refused to provide a defense and Travelers, whose obligations in connection with the underlying lawsuit are excess to those of Hudson, has been providing a defense to Richards and the City. Hudson must therefore reimburse Travelers "for the defense costs (including reasonable attorneys' fees and costs) it has incurred" since the date of the second tender. *Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 616 (S.D.N.Y. 2017). While the amount of costs as of the date of the motion has been set forth in the affidavit of Christine L. Dodge, that

12

calculation includes defense costs that pre-dated the second tender to Hudson, does not consider costs incurred since the filing of the affidavit, and is not supported by any original invoices or other records. As a result, unless the parties are able to reach agreement on the amount of defense costs, an inquest on damages will be necessary. Hudson does not disagree that an inquest to fix the amount of damages may be appropriate.

The only point of disagreement on damages concerns the underlying third-party action. Hudson claims that Travelers is not entitled to recover costs associated with prosecuting the third-party claims brought by Richards and the City against RVS, as those costs are not reasonable "defense" costs. But Hudson provides no caselaw in direct support of this proposition. Indeed, all caselaw on the topic comes to the opposite conclusion. That is, courts have found that third-party claims and cross claims similar to those at issue here are an "essential component" of the underlying defense and, as a result, costs associated with those claims qualify as reimbursable defense costs. *Liberty Mutual Ins. Co. v. N.Y. Marine and Gen. Ins. Co.*, 505 F. Supp. 3d 260, 275 (S.D.N.Y. 2020); *see also Jenel Mgmt. Corp. v. Pac. Ins. Co*., 55 A.D.3d 313, (1st Dep't 2008) (where plaintiff-insurer initiated a third-party claim against the insured of the defendant-insurer, holding that the plaintiff-insurer's "third-party claims against the [insured] were an essential component of their defense of the main underlying action, and, accordingly, plaintiff insurer is entitled to reimbursement of the . . . attorneys' fees it incurred in prosecuting those claims"); *Perchinsky v. State*, 232 A.D.2d 34, 660 N.Y.S.2d 177, 181 (3d Dep't 1997) (holding that insured's recovery "should include not only the cost of defending the main claim, but also the costs of pursuing the third-party actions because the filing of the third-party actions was an essential component of the defense of the main action").

The Court concludes that Hudson owes all costs Travelers has incurred defending the underlying lawsuit since the second tender date, including costs associated with the third-party claims against RVS.

## **CONCLUSION**

For the reasons discussed above, the Court grants the motion by Travelers for partial summary judgment. The Court declares that: the City and Richards are additional insureds under the Hudson Policy; Hudson is obligated to defend those additional insureds with respect to the underlying lawsuit; Hudson's policy provides coverage primary to that afforded by Travelers; and, with respect to the underlying lawsuit, the Travelers coverage is excess to that of Hudson. The Court also concludes that Travelers is entitled to reimbursement of all defense costs incurred following its second tender to Hudson in January 2021. The Court will issue a subsequent order with respect to an inquest on the amount of damages.

The Court further denies as moot Travelers' letter motion for oral argument. [ECF No. 22]. The Clerk of Court respectfully is requested to close the pending motions at ECF Nos. 17 and 22. By April 7, 2023, the parties shall submit to the Court a joint letter proposing next steps in this case.

**SO ORDERED.**

**Date: March 8, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**